UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| LORRAINE FRIAS, | ) | Case No. 2:11-CV-02178 JAM-GGH |
| | ) | |
| Plaintiff, | ) | ORDER GRANTING IN PART AND |
| | ) | DENYING IN PART DEFENDANTS' |
| v. | ) | MOTION TO DISMISS |
| | ) | |
| PATRICK A. CORVINGTON, et al, | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

This matter is before the Court on Defendants Patrick A. Corvington and Corporation for National and Community Service's ("CNCS") (collectively "Defendants") Motion to Dismiss (Doc. #12).[1] Plaintiff Lorraine Frias opposes the motion with respect to Defendant Corvington, but does not oppose dismissal of CNCS and the Doe Defendants (Doc. #16). Defendant Patrick Corvington, Chief Executive Officer of CNCS, is designated by CNCS as its representative against whom any civil action should be filed. Defendants replied to the opposition (Doc. #17).

---

[1] This motion was determined to be suitable for decision without oral argument. E.D. Cal. L.R. 230(g). The hearing was originally scheduled on February 8, 2012.

1

I.   FACTUAL ALLEGATIONS & PROCEDURAL BACKGROUND

This action originated when Plaintiff filed a complaint (Doc. #2) with this Court on August 16, 2011.  The allegations in the complaint, which are accepted as true for this motion, focus on two interrelated series of events during Plaintiff's employment with Defendant CNCS.  First, Plaintiff alleges that she participated in an investigation conducted by the Office of the Inspector General ("OIG").  Second, Plaintiff alleges that a co-worker, Willie Holmes, created a hostile work environment for her during her time at CNCS.  Plaintiff filed two Equal Employment Opportunity Commission ("EEOC") complaints concerning Mr. Holmes.

Plaintiff was hired by CNCS on October 16, 2005.  She was promoted to the position of Resource Manager for the Pacific Region campus in June 2006.  After October 2009, Plaintiff took a medical leave.  Plaintiff's employment was terminated at some point after she began medical leave despite providing medical documentation to CNCS.

Plaintiff was involved in several complaints and investigations concerning Mr. Holmes and other employees.  In March 2007, Plaintiff participated in an EEOC investigation against CNCS initiated by another employee.  During that investigation, Plaintiff supported allegations of racial preference toward African American employees and discrimination within the Pacific Region Campus where she worked.  In May 2007, Plaintiff reported an inappropriate relationship between a co-worker and a Team Leader on Campus.

Then in January 2008, Plaintiff sent a letter concerning Mr. Holmes's conduct to their mutual supervisor, James Phipps.

Plaintiff's complaint states that Mr. Holmes "was allowed, on numerous occasions, to create an extremely hostile working environment for the Plaintiff. . . ." Compl. ¶ 3.  The January 2008 complaint to Mr. Phipps concerned harassment and hostility toward Plaintiff.  Shortly afterward, Mr. Holmes allegedly directed an expletive toward Plaintiff during a confrontation where she felt physically threatened.  She also reported this incident to CNCS supervisors.

Plaintiff alleges that no action was taken with regard to her complaints about Mr. Holmes, even though Mr. Holmes exhibited threatening and aggressive behavior in the presence of supervisors.  Plaintiff then filed an EEOC complaint against both Mr. Phipps and Mr. Holmes on April 14, 2008.  On April 18, 2008, Mr. Phipps allegedly told Plaintiff that dropping the complaint would be in her best interest because the content of the complaint might upset Mr. Holmes.  On August 19, 2008 Plaintiff filed another EEOC complaint concerning Mr. Phipps and Mr. Holmes, but she did not follow through with the EEOC and failed to submit required paperwork.

On December 22, 2008, the national director of CNCS suspended Mr. Holmes for 30 days.  At the end of his suspension, he returned to CNCS with a different title but no reduction in salary or benefits.  Plaintiff sent a letter to the EEOC, the OIG, and the Office of Human Capital complaining about Mr. Holmes's return.

Next, Plaintiff participated in an OIG investigation that determined that Mr. Holmes was involved in operational and fiscal improprieties.  Mr. Holmes resigned after being issued a Notice of Proposed Removal by the then acting national director of CNCS,

Mikel Herrington.  Then on October 9, 2009, Mr. Holmes returned to the CNCS Pacific campus with the permission of Mr. Phipps for the day.  Shortly after this incident, Plaintiff started the medical leave that led to her termination.

Plaintiff's complaint contains nine claims.  Claims two through five and eight were voluntarily dismissed (Doc. #10). Plaintiff offers no opposition to dismissal of claims seven and nine.  Plaintiff's remaining claims are claim one, Retaliation in Violation of 43 U.S.C. § 2000e-3(a); and claim six, Discrimination Based on Race in Violation of 42 U.S.C. § 2000e-2.  The Court has jurisdiction pursuant to 28 U.S.C. § 1331 over the federal claims, and jurisdiction pursuant to 28 U.S.C. § 1367 over the remaining state law claims.

## II.  OPINION

### A.  Legal Standard

#### 1.  Motion to Dismiss

A party may move to dismiss an action for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6).  In considering a motion to dismiss, the court must accept the allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff.  Scheuer v. Rhodes, 416 U.S. 232, 236 (1974), overruled on other grounds by Davis v. Scherer, 468 U.S. 183 (1984); Cruz v. Beto, 405 U.S. 319, 322 (1972).  Assertions that are mere "legal conclusions," however, are not entitled to the assumption of truth.  Ashcroft v. Iqbal, 129 S. Ct. 1937, 1950 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  To survive a motion to dismiss, a

plaintiff needs to plead "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570. Dismissal is appropriate where the plaintiff fails to state a claim supportable by a cognizable legal theory. Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990).

Upon granting a motion to dismiss for failure to state a claim, the court has discretion to allow leave to amend the complaint pursuant to Federal Rule of Civil Procedure 15(a). "Dismissal with prejudice and without leave to amend is not appropriate unless it is clear . . . that the complaint could not be saved by amendment." Eminence Capital, L.L.C. v. Aspeon, Inc., 316 F.3d 1048, 1052 (9th Cir. 2003).

B. Discussion

1. Defendant CNCS and Doe Defendants

Defendants seek dismissal of CNCS and the Doe defendants, and Plaintiff does not oppose this motion. Accordingly, CNCS and the Doe Defendants are dismissed with prejudice from this action.

2. Claims Seven and Nine

Defendants argue that these claims should be dismissed because Plaintiff failed to exhaust agency remedies as required by the Federal Torts Claims Act, 28 U.S.C. § 2675(a). Plaintiff does not oppose Defendants' motion with regard to these claims. Accordingly, Defendants' motion to dismiss claims seven and nine is granted with prejudice.

3. Plaintiff's Title VII Retaliation Claim

Defendants move for dismissal of the first claim on the grounds that Plaintiff has not stated a Title VII retaliation claim. Defendants argue that Plaintiff fails to allege the

5

necessary elements of 1)engaging in protected activity, 2) suffering an adverse employment action, and 3) a causal nexus between the adverse employment action and the protected activity. Plaintiff responds that all three elements are sufficiently pled.

Absent allegations of direct discrimination, a Title VII retaliation claim, pursuant to 42 U.S.C. 2000e-3, is analyzed according to the McDonnell Douglas burden shifting standard. Yartzoff v. Thomas, 809 F.2d 1371, 1375 (9th Cir. 1987) (citations omitted). A plaintiff establishes a prima facie case by showing "that (1) he engaged or was engaging in activity protected under Title VII, (2) the employer subjected him to an adverse employment decision, and (3) there was a causal link between the protected activity and the employer's action." Id. (citations omitted).

For the purposes of a motion to dismiss, a pleading does not need to contain all of the facts necessary to show a prima facie case. See Washington v. Certainteed Gypsum, Inc., No. 2:10-cv-00204-GMN-LRL, 2011 WL 3705000, at *5 (D. Nev. Aug. 24, 2011). The relevant standard requires that the allegations in the complaint give fair notice of the nature of the claim to the opposing party, and that the factual allegations in the complaint, taken as true, plausibly suggest entitlement to relief. Starr v. Baca, 652 F.3d 1202, 1216 (9th Cir. 2011). While facts supporting all of the elements of a prima facie case are not required in a Title VII complaint, "those elements are nonetheless relevant to the court's analysis of the sufficiency of the complaint." Sablan v. A.B. Won Pat Int'l Airport Auth., Guam, No. 10-00013, 2010 WL 5148202, at *4 (D. Guam Dec. 9, 2010).

    (a) Plaintiff's Alleged Protected Activity

1 Title VII retaliation claims only apply to activity protected
2 by Title VII.  42 U.S.C. § 2000e-3(a) (prohibiting discrimination
3 against an employee who makes charges, testifies, participates, or
4 assists in Title VII enforcement proceedings); Vasconcelos v.
5 Meese, 907 F.2d 111, 113 (9th Cir. 1990) (The purpose of section
6 2000e-3's participation clause "is to protect the employee who
7 utilizes the tools provided by Congress to protect his rights.")
8 (quoting Sias v. City Demonstration Agency, 588 F.2d 692, 695 (9th
9 Cir.1978)).  Thus, Plaintiff meets this burden if the complaint
10 contains allegations that she participated in activity protected by
11 Title VII.
12     First, Plaintiff alleges that she participated in an
13 investigation conducted by the OIG.  This activity is directly
14 analogous to the Vasconcelos case.  907 F.2d 111.  In that case,
15 the plaintiff had no claim because he was fired for making
16 statements during the course of an internal affairs investigation,
17 not during an investigation pursuant to a Title VII complaint.  Id.
18 at 113.  Plaintiff's allegation in this case that she participated
19 in the OIG investigation and was subject to adverse employment
20 action for doing so is not "protected activity" for Title VII
21 purposes because Title VII only applies to investigations about
22 discrimination based on race, sex, national origin, religion, and
23 color.
24     Next, Plaintiff relies on her participation in EEOC
25 proceedings based both on complaints she made to the EEOC and
26 complaints made by co-workers.  Defendants concede in their reply
27 that EEOC activity is protected by Title VII.  Reply, at 3.
28 Accordingly, Plaintiff has alleged protected activity consisting of

7

her involvement with the EEOC.

### (b) Adverse Employment Action

"[A]n adverse employment action is one that materially affects the compensation, terms, conditions, or privileges of . . . employment." Davis v. Team Elec. Co., 520 F.3d 1080, 1089 (9th Cir. 2008) (quoting Chuang v. Univ. of Cal. Davis, 225 F.3d 1115, 1126 (9th Cir. 2000). An adverse employment action is one that "is reasonably likely to deter employees from engaging in protected activity." Ray v. Henderson, 217 F.3d 1234, 1243 (9th Cir. 2000).

In this case, Plaintiff alleges that she was terminated during a medical leave despite providing documentation to support her medical problems. Termination is an adverse employment action.

Plaintiff also argues that by alleging that Mr. Holmes's behavior created a hostile work environment, she has satisfied the adverse employment action element.

"For an atmosphere of . . . harassment or hostility to be actionable . . . the offending behavior must be sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." Pa. State Police v. Suders, 542 U.S. 129, 146-47 (2004) (quoting Meritor Savings Bank, FSB v. Vinson, 477 U.S. 57, 67 (1986)). A hostile work environment creates a constructive discharge amounting to an adverse employment action when a reasonable person in the same circumstance would feel forced to resign. Id. at 147 (citing Breeding v. Arthur J. Gallagher & Co., 164 F.3d 1151, 1160 (C.A.8 1999)).

Plaintiff fails to meet the requisite pleading standard on this aspect of adverse employment action. The complaint repeatedly alleges that Mr. Holmes's conduct was pervasively harassing,

aggressive, and threatening, but it provides no indication as to what that behavior actually was. Rule 8 requires not just a recitation of legal characterizations or labels, but the rule also requires pleading facts sufficient to bring the allegations from the realm of the speculative to the plausible. Twombly, 550 U.S. at 570. The only fact alleged is that Mr. Holmes directed a single expletive toward Plaintiff in February, 2008. Compl. ¶ 14. This single allegation does not meet the requirement that the "offending behavior be . . . sufficiently severe or pervasive." Suders, 524 U.S. at 146-47.

           (c)   Causal Nexus

Causation "may be inferred from proximity in time between the protected action and the allegedly retaliatory employment decision." Ray, 217 F.3d at 1244 (internal quotations omitted). There is no bright line amount of time necessary to establish a causal connection in a retaliation claim. See Coszalter v. City of Salem, 320 F.3d 968, 977-978 (9th Cir. 2003) (court rejected a bright line rule for establishing causation and found that three to eight months is within a time range that can support an inference of retaliation).

In this case, Plaintiff alleges that she was unable to return to her job because of continued harassment and a hostile working environment. Compl. ¶ 29. Plaintiff was then terminated from her position. Id. Plaintiff does not directly allege a connection between her protected activity and her eventual termination, but for the purposes of the present motion to dismiss she does not need to. Her burden is to place Defendants on notice as to the nature of the claim and to allege facts sufficient to make the allegations

plausible.  Here, Plaintiff alleges that she complained to the EEOC in October and was fired shortly thereafter.  These alleged facts are sufficient and therefore her first claim survives Defendants' motion to dismiss.

         4.   Plaintiff's Racial Discrimination Claim

Defendants move to dismiss Plaintiff's sixth claim, Title VII discrimination, on the grounds that the complaint does not contain a plausible discrimination claim.  Plaintiff responds that there is a viable claim, and each element of a prima facie case is met on the theory that since Defendants treated Mr. Holmes favorably due to his race, Plaintiff was subjected to further harassment from Mr. Holmes.

The legal standard for Plaintiff's race discrimination claim is the same as the standard for her retaliation claim except that the elements of the prima facie case are different.  To establish a prima facie case of discrimination under Title VII, a Plaintiff must show "(1) he is a member of a protected class; (2) he is qualified for his employment; (3) he experienced adverse employment action; and (4) similarly situated individuals outside his protected class were treated more favorably, or other circumstances surrounding the adverse action give rise to an inference of discrimination.  Fonseca v. Sysco Food Services of Arizona, Inc., 374 F.3d 840, 847 (9th Cir. 2004) (citing McDonnell Douglas Corp., 411 U.S. at 802).

            (a)   Plaintiff's Protected Class

There is no dispute that Plaintiff is Hispanic, a class protected by Title VII.

                (b)   <u>Plaintiff Was Qualified For Her Position</u>

Defendants argue that the complaint never states that Plaintiff was performing according to the employers legitimate expectations. Plaintiff concedes the point, but argues in her opposition that she can allege facts, if given leave to amend the complaint, that she was qualified for her position and performing well. Plaintiff states that those facts include allegations about positive evaluations and pay increases that she received during the course of her employment with CNCS.

                (c)   <u>Plaintiff Suffered An Adverse Employment Action</u>

For the same reasons discussed <u>supra</u>, Plaintiff sufficiently alleges that she suffered an adverse employment action when she was terminated after taking medical leave in 2009. Plaintiff does not adequately allege a constructive discharge due to a hostile work environment.

                (d)   <u>Similarly Situated Individuals Were Treated More Favorably</u>

"In order to show that the [employees] allegedly receiving more favorable treatment are similarly situated . . ., the individuals seeking relief must demonstrate, at the least, that they are similarly situated to those employees in all material respects." <u>Moran v. Selig</u>, 447 F.3d 748, 755 (9th Cir. 2006) (citing <u>Aragon v. Republic Silver State Disposal, Inc.</u>, 292 F.3d 654, 660 (9th Cir.2002)). "[I]ndividuals are similarly situated when they have similar jobs and display similar conduct. . . . Employees in supervisory positions are generally deemed not to be similarly situated to lower level employees." <u>Vasquez v. Cnty. of L.A.</u>, 349 F.3d 634, 641 (9th Cir. 2003). To meet this element,

Plaintiff may also allege that "other circumstances surrounding the adverse employment action give rise to an inference of discrimination." Peterson v. Hewlett-Packard Co., 358 F.3d 599, 603 (9th Cir. 2004).

In this case, Plaintiff alleges that Mr. Holmes was treated more favorably because of his race, which permitted him to continue harassing Plaintiff. Mr. Holmes, however, was not similarly situated to Plaintiff because the complaint alleges that they engaged in very different conduct. Mr. Holmes was allegedly hostile, threatening, and aggressive whereas Plaintiff engaged in activity protected by Title VII. It is impossible to determine whether or not Plaintiff would have been disciplined in the same manner as Mr. Holmes if she engaged in similar behavior because according to the complaint, Plaintiff never engaged in behavior similar to Mr. Holmes. Plaintiff does not allege facts otherwise that give rise to a plausible inference of discrimination. Accordingly, Plaintiff fails to allege that similarly situated individuals were treated more favorably than she was.

In sum, the Court finds that the complaint places Defendants on notice of the nature of the claim against them, but Plaintiff fails to allege facts sufficient to make her claim plausible. Without facts showing some plausible inference of discrimination, related to Mr. Holmes's behavior or otherwise, Plaintiff's complaint does not meet federal pleading requirements. Accordingly, this claim should be dismissed. However, since Plaintiff may be able to cure the defects in her complaint through amendments, dismissal with leave to amend appropriate.

## III. ORDER

After carefully reviewing all of the papers filed in relation to this motion, the Court rules as follows:

1. All claims against defendant Corporation for National Community Service and all Doe defendants are dismissed with prejudice;

2. Plaintiff's Intentional Infliction of Emotional Distress and Negligent Supervision, Hiring, and Retention claims are dismissed with prejudice;

3. Plaintiff's Retaliation in Violation of 42 U.S.C. § 2000e-3(a) is not dismissed; and

4. Plaintiff's remaining claim, Discrimination Based on Race in Violation of 42 U.S.C. § 2000e-2, is dismissed with leave to amend.

If Plaintiff wishes to file an Amended Complaint that is in accordance with this Order, it must be filed within twenty (20) days. Otherwise, the suit will proceed only on Plaintiff's first claim for retaliation.

IT IS SO ORDERED.

Dated: February 24, 2012

_____
JOHN A. MENDEZ,
UNITED STATES DISTRICT JUDGE