UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LORRAINE FRIAS,<br><br>        Plaintiff,<br><br>    v.<br><br>WENDY SPENCER, Chief Executive Officer of the Corporation for National Community Service,<br><br>        Defendant. | No.  11-cv-02178 TLN-DAD<br><br>**ORDER** |

This matter is before the Court on Defendant, Wendy Spencer's ("Defendant") Motion for Summary Judgment.  (See Def.'s Mot. for Summ. J., ECF 41.)[1]  Plaintiff, Lorrain Frias ("Plaintiff"), opposes the Motion.  (See Pl.'s Opp'n to Def.'s Mot. for Summ. J., ECF 44.)  For the reasons set forth below, Defendant's motion is GRANTED in part and DENIED in part.

Plaintiff, a Hispanic female, is a former employee of the Corporation for National and Community Service ("CNCS").[2]  The gravamen of Plaintiff's complaint is that Willie Holmes, an African American male, constantly threatened and harassed her at the CNCS campus.

---

[1]  Because oral argument will not be of material assistance, the Court orders this matter submitted on the briefs. E.D. Cal. L.R. 230(g).

[2]  According to its website, CNCS is a nationwide community-service oriented organization that helps support a number of causes across the country, supporting education, veteran and military families, health, and economic opportunity.  See http://www.nationalservice.gov/about.

1

Plaintiff alleges that, despite her repeated complaints, and complaints of numerous other employees, Plaintiff's superiors, who are also African American, failed to adequately discipline Holmes in order to prevent further threats and harassment.  Plaintiff maintains that Holmes' conduct created a hostile work environment.  Plaintiff asserts that her superiors did not properly discipline Holmes because he is African American.  Based on the foregoing, Plaintiff asserts two claims: (1) Retaliation in Violation of 42 U.S.C. § 2000e-3(a); and, (2) Discrimination Based on Race in violation of 42 U.S.C. § 2000e-2.  (See Pl.'s First Am. Compl. ("FAC"), ECF 21.)

## BACKGROUND[3]

### A.   Factual Background

Defendant hired Plaintiff as a member support specialist for the pacific region campus in 2005.  (SUF #1.)  Plaintiff was promoted to resource manager in 2006.  (Id.)  Region Director James Phipps, an African American male, was Plaintiff's second-line supervisor.  (SUF #2.)  Marlene Mazyck, an African American female, was the national director for the agency.  (SUF #3.)  Willie Holmes, also an African American, was the facilities manager who worked in the operations department with Plaintiff.  (SUF #4.)

In response to Defendant's interrogatory, Plaintiff stated that Holmes yelled at Plaintiff in her office, telling her that she did not know how to do her job.  Plaintiff maintains that she reported the incident but no disciplinary action was taken.  (ECF 48 #1 (citing Frias Depo,[4] Ex.

---

[3]   The relevant facts are, for the most part, undisputed.  Where the facts are undisputed, the Court will cite to Defendant's Statement of Undisputed Facts.  (See Def.'s Stmt. of Undisputed Facts ("SUF"), ECF 41-2.)  The Court may also, at times, cite to Plaintiff's statement of disputed facts and Defendant's response thereto.  (See Pl.'s Am. Stmt. of Material Facts, ECF 48; Def.'s Resp. to Pl.'s Stmt. of Material Facts, ECF 49-3.)  Finally, where necessary, and where a material fact is genuinely disputed, the Court will cite to the underlying evidence proffered by the respective parties.

[4]   Plaintiff's deposition was lodged with the Court on November 07, 2013.  (See Notice of Filing Deposition Transcript, ECF 40.)  Defendant "moves to strike plaintiff's Amended Separate Statement of Disputed Material Facts in opposition to Spencer's summary judgment motion, along with the amended notice of filing deposition transcripts, and exhibits . . . because plaintiff filed the pleadings and evidence after the deadline for filing her opposition brief, so they were untimely filed."  (ECF 49-4 at 1:18-22.)  The Court acknowledges that Plaintiff filed the Amended Statement and supporting evidence after the deadline for filing opposition papers.  However, in light of the strong policy in favor of deciding matters on the merits, the Court declines to strike the Amended Statement and will consider it in its analysis.  Plaintiff's counsel is

B).)[5]  Plaintiff also alleges that in February 2008, Holmes verbally assaulted Plaintiff, while criticizing her job performance and telling her: "[y]ou don't fucking tell me how to do my job." (ECF 48 #4.)

In June 2008, some CNCS employees complained of Holmes' conduct.  (SUF #6.)  In response, the agency conducted an investigation and, on August 19, 2008, Vazco Espinoza, Holmes' superior and Plaintiff's first-line supervisor, issued Holmes a formal reprimand. (SUF #7.)  On October 29, 2008, Phipps placed Holmes on administrative leave pending an investigation that Holmes had acted inappropriately towards Espinoza on October 16, 2008.[6] (SUF#8.)  The agency also hired a security guard for the campus in October 2008.  (SUF #9.)[7]

On November 12, 2008, Phipps issued a notice of proposed removal to Holmes in connection with the October 16 incident.  (SUF #10.)  On December 12, 2008, Phipps reduced the penalty to a 30-day suspension.  (SUF #11.)  Holmes returned to work in January 2009.  (SUF #12.)

On January 8, 2009, when Plaintiff learned that Holmes was going to be allowed to return to his job, Plaintiff sent a letter to management expressing fear for her safety.  (ECF 48 #14.) On February 20, 2009, acting National Director Mike Herrington issued a notice of proposed removal to Holmes and placed him on administrative leave.  (SUF #13.)  On April 9, 2009, Chief of Program Operations Kristin McSwain issued a final decision to remove Holmes effective April 11, 2009.  (SUF #14.)

---

admonished, however, that future failure to comply with this court's scheduling requirements, particularly without leave of court, will not be tolerated.

[5] Plaintiff objects to this statement on the grounds that it is irrelevant and that it is barred by the statute of limitations because it occurred more than 45 days prior to Plaintiff contacting an EEO counselor.  First, the Court finds that the statement is relevant to provide context as to Plaintiff's working environment.  Moreover, the Court finds that the statute of limitations does not bar this statement because, as described in more detail, *infra*, Plaintiff has asserted a claim for hostile work environment.  Plaintiff makes the same objection to the majority of the statement set forth in Plaintiff's separate statement of disputed material facts.  These objections are overruled for the same reason.

[6] Pursuant to its collective bargaining agreement with its union, the agency employs progressive discipline.

[7] Defendant disputes the date the security guard was hired.  Such a dispute, however, is irrelevant to the Court's analysis.

3

On October 9, 2009, Plaintiff saw Holmes' name written on the whiteboard in the multipurpose room, and she saw Holmes in the room. (SUF #15.) According to Plaintiff's deposition, Holmes was on campus to do volunteer work. (SUF #16.) Plaintiff left work that day and did not return to work thereafter. (SUF #20.)

On November 17, 2009, Plaintiff contacted an EEO counselor. (SUF #21.) Plaintiff filed her formal complaint on January 13, 2010. (SUF #22.) In her discrimination complaint to CNCS, Plaintiff stated that on October 7, 2009, she experienced "direct harassment from . . . James Phipps." (Frias Depo, Ex. F.) Plaintiff further states that the October 9, 2009, presence of Holmes on campus "mark[ed] the last harassment [she] could humanly, emotionally, and physically endure when Holmes was on campus." (Id.) Plaintiff explained that she has "repeatedly expressed that she was scared of him and did not want him to be around [her] or her workplace." (Id.) Plaintiff alleges in her complaint that "Phipps failed to take immediate action to prevent or stop the discrimination, harassment, and the hostile environment." (Id.) The EEOC Administrative Law Judge granted Defendant summary judgment on March 23, 2011. (SUF #24.)

**B.     Procedural Background**

Plaintiff filed her complaint on August 16, 2011, asserting six claims for employment discrimination, two California common law claims, and one claim for violations of the California Ralph Civil Rights Act. (ECF 2.) On November 16, 2011, Plaintiff voluntarily dismissed her state law statutory claims. (ECF 10.)

Defendant subsequently moved to dismiss the remainder of Plaintiff's claims. (ECF 12.) On February 27, 2012, the Court issued an order granting in part and denying in part Defendant's motion. (ECF 19.) Specifically, the Court denied Defendant's motion to dismiss Plaintiff's claim for retaliation, holding that Plaintiff met the minimal pleading standard set forth in Rule 8 of the Federal Rules of Civil Procedure. (ECF 19 at 8:13-9:10.) The Court also dismissed without prejudice Plaintiff's claim for racial discrimination because Plaintiff failed "to allege that similarly situated individuals were treated more favorably than she was" because of her race. (Id. at 12:17-19.)

1  Plaintiff filed her First Amended Complain ("FAC") on March 15, 2012, asserting only
2 claims for retaliation and racial discrimination under Title VII. (ECF 21.) After hearing oral
3 arguments, the Court denied Defendant's motion to dismiss the FAC. (ECF 25, 28.)

**STANDARD**

**A.  Summary Judgment**

Summary judgment is appropriate when the moving party demonstrates no genuine issue as to any material fact exists, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970). Under summary judgment practice, the moving party always bears the initial responsibility of informing the district court of the basis of its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'" Id. at 324. Indeed, summary judgment should be entered against a party who does not make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Id. at 322.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 585-87 (1986); First Nat'l Bank v. Cities Serv. Co., 391 U.S. 253, 288-289 (1968). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the denials of its pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. Fed. R. Civ. P. 56(c). The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for

the nonmoving party. Id. at 251-52.

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." First Nat'l Bank, 391 U.S. at 289. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587 (quoting Rule 56(e) advisory committee's note on 1963 amendments).

In resolving the summary judgment motion, the Court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. Rule 56(c); SEC v. Seaboard Corp., 677 F.2d 1301, 1305-06 (9th Cir. 1982). The evidence of the opposing party is to be believed, and all reasonable inferences that may be drawn from the facts placed before the Court must be drawn in favor of the opposing party. Anderson, 477 U.S. at 255. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898 (9th Cir. 1987).

Finally, to demonstrate a genuine issue that necessitates a fact finder, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 586-87.

**B.   Title VII**

Title VII claims are analyzed using the burden-shifting framework of McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S. Ct. 1817, 36 L.Ed.2d 668 (1973). Under this approach, Plaintiff bears the initial burden of establishing a prima facie case before there is any duty by a defendant to defend. See McDonnell Douglas Corp., 411 U.S. at 802; Texas Dept. of Cmty. Affairs v. Burdine, 450 U.S. 248, 252-53 (1981).

///

However, merely stating a prima facie case does not suffice to save a Title VII claim from summary judgment. Burdine, 450 U.S. at 254; Wallis v. J.R. Simplot Co., 26 F.3d 885, 890 (9th Cir. 1994) ("the mere existence of a prima facie case . . . does not preclude summary judgment"). Instead, stating a prima facie case simply shifts the burden to the employer to produce evidence demonstrating "that the adverse employment actions were taken 'for a legitimate, nondiscriminatory reason.'" St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 507 (1993) (internal citation omitted).

Once the employer has articulated a legitimate, non-discriminatory reason for the employment action, the presumption of discrimination "drops from the case." Id. Plaintiff must then prove not only that the proffered legitimate reason is false, but also that intentional discrimination was the true reason for the adverse personnel action. Id. at 515. To avoid summary judgment, plaintiff's evidence of pretext must consist of "sufficiently specific facts." Collings v. Longview Fibre Co., 63 F.3d 828, 834 (9th Cir. 1995); Nidds v. Schindler Elevator Corp., 113 F.3d 912, 918 (9th Cir. 1996); Wallis, 26 F.3d at 890. Evidence to support a prima facie case of discrimination alone is not sufficient to show pretext. Snead v. Metro. Prop. & Cas. Ins. Co., 237 F.3d 1080, 1093-94 (9th Cir. 2001) ("[S]ufficient evidence to support an inference of discrimination . . . is not sufficient to raise a genuine issue of material fact regarding the truth of [defendant's] proffered nondiscriminatory reasons . . .").

## ANALYSIS

### A.   Exhaustion of Administrative Remedies

Defendant maintains that the Court lacks jurisdiction over claims predicated upon conduct that occurred prior to October 3, 2009. (ECF 41-1 at 7:11-8:11.)   Specifically, Defendant maintains that because Plaintiff did not contact an EEO counselor until November 17, 2009, any alleged adverse action that occurred prior to October 3, 2009, is time-barred pursuant to 29 C.F.R. § 1614.105(a). (Id. at 8:1-5.)  Plaintiff maintains that the Court has jurisdiction over all the conduct alleged in the complaint because Plaintiff's race discrimination claim is predicated upon "all of the conduct that led up to ultimately having suffered enough harassment and abuse with the culminating event occurring on October 9, 2009, that she was forced to take a leave of

1  absence." (ECF 44 at 5:19-22.) In reply, Defendant argues that Plaintiff's contention is
2  unavailing because Plaintiff's FAC does not assert a claim for hostile work environment. (ECF
3  49 at 1:22-25.)

4  29 C.F.R. § 1614.105(a) provides that "[a]ggrieved persons who believe they have been
5  discriminated against on the basis of race, color, religion, sex, national origin, age, disability, or
6  genetic information must consult a Counselor prior to filing a complaint in order to try to
7  informally resolve the matter." That "aggrieved person must initiate contact with a Counselor
8  within 45 days of the date of the matter alleged to be discriminatory, . . . ." Id. at (a)(1). "Failure
9  to comply with this regulation is 'fatal to a[n] . . . employee's discrimination claim.'" Cherosky v.
10 Henderson, 330 F.3d 1243, 1245 (9th Cir. 2003) (quoting Lyons v. England, 307 F.3d 1092, 1105
11 (9th Cir. 2002)). However, "[t]he continuing violations doctrine creates an equitable exception to
12 a statutory limitation in a [discrimination] action when the unlawful behavior is deemed
13 ongoing." 45B Am. Jur. 2d Job Discrimination § 1140 (2012). Hostile environment claims are
14 "different in kind from discrete acts" because "[t]heir very nature involves repeated conduct."
15 Nat'l Railroad Passenger Corp. v. Morgan, 536 U.S. 101, 115 (2002)

16 The Court finds unavailing Defendant's contention that the continuing violations claim is
17 not applicable in this case because Plaintiff did not plead a hostile work environment claim in the
18 FAC. The FAC specifically alleges that Defendant subjected Plaintiff to a hostile work
19 environment. (See ECF 21 ¶ 22.) Under Plaintiff's claim for racial discrimination, the FAC
20 incorporates by reference the allegations that Defendant subjected Plaintiff to a hostile work
21 environment, and thus, the Court will consider Plaintiff's hostile work environment claim. See
22 Fontana v. Haskin, 262 F.3d 871, 877 (9th Cir. 2001) (holding failure to specifically plead a claim
23 for sexual harassment was not fatal where the complaint described the alleged harassment and
24 incorporated those allegations by reference.) see also Indergard v. Georgia-Pacific Corp., 2010
25 WL 331774 at *5 (D.Or. Jan. 21, 2010) ("[A] party need not plead specific legal theories in a
26 complaint."). Because Plaintiff has adequately pled a claim for hostile work environment
27 predicated upon allegations of repeated inappropriate conduct, the Court will consider conduct
28 that occurred prior to October 3, 2009, but only as that conduct relates to Plaintiff's hostile work

environment claim.

**B.    Retaliation**

Defendant moves for Summary Judgment on Plaintiff's claim that Defendant retaliated against Plaintiff. In Plaintiff's opposition to Defendant's motion, Plaintiff only mentions the retaliation claim in passing.[8] Specifically, Plaintiff merely recites the legal standard for a Title VII retaliation claim without informing the Court as to how the facts of this case apply to that standard. (See ECf 44 at 7:26-8:15.)

In order to meet her prima facie burden for her retaliation claim, Plaintiff must show that she was engaged in a protected activity, which includes either: (1) opposing any practice made an unlawful employment practice by Title VII, or (2) or making a charge, testifying, assisting, or participating in any manner in an investigation, proceeding or hearing under Title VII. 42 U.S.C. § 2000e-3(a). Plaintiff must show, at the very least, that Defendant's conduct was sufficiently severe to dissuade a reasonable worker from making or supporting a charge of discrimination. Burlington Northern and Santa Fe Ry. Co. v. White, 548 U.S. 53, 57 (2006).

Here, the Court finds that Defendant has met its initial burden of informing the Court of the basis of its motion. Celotex, 477 U.S. at 323. Specifically, Defendant has demonstrated that Plaintiff has not proffered evidence that she suffered an adverse employment action at any time after October 3, 2009. Moreover, Defendant has demonstrated that Plaintiff has proffered no evidence of a causal link between any alleged protected activity and any adverse employment action in response thereto. See Celotex, 477 U.S. at 322 (holding that summary judgment should be entered against a party who does not make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.)

Because Defendant, the moving party, has met its initial responsibility, the burden shifts to Plaintiff to establish that a genuine issue of material fact exists. Matsushita Elec. Indus, 475 U.S. at 585-87. In attempting to establish the existence of a factual dispute, Plaintiff merely lays

---

[8]    Indeed, Plaintiff devotes only a portion of a page in her opposition to her claim for retaliation.

out the legal standard for retaliation claims without showing specifically what disputed material facts as to her retaliation claim necessitate a jury trial. (ECF 54 at 11:22-26.) Moreover, neither the evidence cited in Defendant's separate statement, nor the evidence Plaintiff cites in her statement of disputed facts demonstrate that Plaintiff suffered any adverse employment action.

This matter is currently at the summary judgment stage, and thus, Plaintiff must direct the Court to what *specific* facts as to her retaliation claim are both genuinely disputed and material. Plaintiff has failed to do so; indeed, Plaintiff's opposition does not even attempt to do so. The Court therefore finds that Plaintiff has failed to meet her burden on summary judgment. See Matsushita, 475 U.S. at 585-87. As such, Defendant's motion for summary judgment on Plaintiff's claim for retaliation is GRANTED.

**C.     Title VII Racial Discrimination**

Defendant moves for summary judgment on Plaintiff's second claim for racial discrimination under Title VII. In support of her claim for racial discrimination, Plaintiff maintains that "Defendant's disparate treatment of Plaintiff based on racial preference to an African American employee resulted in the Plaintiff's inability to continue her employment with the Agency, and threats of physical violence being made to the Plaintiff, and harassment . . . against the Plaintiff by the protected African American employee caused psychological and physical injury, . . ." (ECF 21 ¶ 42.)

Defendant argues that Plaintiff's race discrimination claim cannot withstand summary judgment because Plaintiff has not demonstrated that she suffered an adverse employment action. In support of this argument, Defendant points to one event relied on by Plaintiff: Holmes appearance on campus in 2009. Defendant asserts that "[a] decision to allow Holmes on campus so that he could perform volunteer work is not any sort of employment action at all, adverse or otherwise." (ECF 41-1 at 9:23-24.) Defendant also maintains that Plaintiff cannot sustain a disparate treatment race discrimination claim because she was not treated differently than any similarly-situated employee who is not Hispanic; specifically, Defendant notes that the alleged harasser, Holmes, did not hold the same position as Plaintiff. (Id. at 10:11-15.)

///

In opposition, Plaintiff argues that she is not asserting a disparate treatment claim; rather, Plaintiff asserts that she was subjected to a hostile work environment[9] because of her race. (ECF 44 at 6:24-27.) Plaintiff notes that, "to survive summary judgment, she must show a genuine factual dispute as to (1) whether a reasonable non-African-American would find the workplace so objectively and subjectively hostile toward non-African-American employees as to create an abusive working environment; (2) whether the employer failed to take remedial or disciplinary action; and (3) the conduct must constitute discrimination because of race." (Id. at 7:5-10.)

In reply, Defendant argues that Plaintiff cannot sustain a hostile work environment claim because she does not claim that "the alleged harassing conduct by Holmes was because Plaintiff is Hispanic." (ECF 49 at 6:3-5.) Moreover, Defendant argues that the alleged harassment was sporadic, and thus was not sufficiently severe and pervasive to be actionable under a hostile work environment theory. (Id. at 6:10-14.)

Title VII provides that it is "an unlawful employment practice for an employer . . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race." 42 U.S.C. § 2000e-2(a)(1). Title VII encompasses not only claims for disparate treatment based on race, but also provides a claim for the creation of a hostile work environment, which violates the guarantee of "the right to work in an environment free from discriminatory intimidation, ridicule, and insult." Meritor Sav. Bank, FSB v. Vinson, 477 U.S. 57, 65 (1986). "Courts have long recognized that a workplace in which racial hostility is pervasive constitutes a form of discrimination." Woods v. Graphic Communications, 925 F.2d 1195, 1200 (9th Cir.1991).

In order to survive summary judgment, Plaintiff must establish a genuine factual dispute as to "1) whether a reasonable [Hispanic person] would find the workplace so objectively and subjectively racially hostile as to create an abusive working environment; and 2) whether

---

[9] The Court notes that, while Plaintiff's claim for hostile work environment will proceed past summary judgment, Plaintiff has not addressed any other theory of racial discrimination under Title VII. As such, Plaintiff has not met her summary judgment burden as to any other theory of Title VII racial discrimination, and thus, the *only* claim that survives summary judgment is Plaintiff's claim for racial discrimination under a theory of hostile work environment.

[Defendant] failed to take adequate remedial and disciplinary action." McGinest v. GTE Service Corp., 360 F.3d 1103, 1112 (9th Cir. 2004) (citing Steiner v. Showboat Operating Co., 25 F.3d 1459, 1462-63 (9th Cir.1994)). In evaluating whether the workplace environment is sufficiently hostile to violate Title VII, the Court must take into account "all the circumstances." Nichols v. Azteca Rest. Enter., 256 F.3d 864, 872 (9th Cir.2001). It is enough "if such hostile conduct pollutes the victim's workplace, making it more difficult for her to do her job, to take pride in her work, and to desire to stay on in her position." Steiner, 25 F.3d at 1463. In evaluating the objective hostility of a work environment, the factors to be considered include the "frequency of discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Nichols, 256 F.3d at 872.

"[E]mployers are liable for failing to remedy or prevent a hostile or offensive work environment of which management-level employees knew, or in the exercise of reasonable care should have known." McGinnest, 360 F.3d at 1119 (quoting Ellison v. Brady, 924 F.2d 872, 881 (9th Cir.1991)). "The reasonableness of the remedy depends on its ability to: (1) stop harassment by the person who engaged in the harassment; and (2) persuade potential harassers to refrain from unlawful conduct." Nichols, 256 F.3d at 875 (internal quotations omitted); see also Ellsion, 924 F.2d at 882 ("Title VII requires more than a mere request to refrain from discriminatory conduct.")

       i. *Severe or Pervasive Hostile Environment*

Here, there is no debate that Plaintiff found the workplace sufficiently hostile as to create an abusive working environment—Plaintiff chose to resign after witnessing Holmes on campus on October 9, 2009. The Court also finds that a triable issue of material fact exists as to whether, objectively, Plaintiff was subjected to a hostile work environment. According to Plaintiff's responses to Defendant's interrogatories, Holmes, an African American, began harassing Plaintiff in 2006, when he yelled at her and, despite reporting the incident, no disciplinary action was taken by Plaintiff's African American supervisors. (See ECF 48 #1.) Plaintiff also testified that "Holmes made the performance of [her] job difficult because he failed to follow proper

procedure, . . ." (Id. #2.); see also Steiner, 25 F.3d at 1463 (explaining that hostile conduct making an employee's job more difficult is sufficient to sustain a claim for hostile work environment harassment.) Plaintiff maintains that the harassing conduct continued until Holmes final day working at CNCS: "after Holmes was terminated for fraudulent handling of funds, he saw [Plaintiff] as [she was] exiting the building . . . [he then] clapped and yelled, good job, Lorraine." (Frias Depo. at 115:20-25.) Plaintiff testified that when she reported the incident to Phipps, he reprimanded her for not first reporting it to Espinoza, even though Espinoza was not present that day. (Id. at 116:13-23.) Finally, even after Holmes was terminated, CNCS allowed Holmes to return to campus despite Plaintiff's repeated complaints that she felt physically threatened by him. These incidents constitute only a few examples of the numerous occasions Plaintiff has described, under oath, in which Holmes harassed Plaintiff without consequence.

In sum, the Court finds that a reasonable juror could conclude that Holmes' harassing conduct toward Plaintiff resulted in a hostile work environment that was not remedied because Holmes and Plaintiff's superiors were African American and Plaintiff was Hispanic.[10] Importantly, Defendant has not proffered any evidence of its own to refute Plaintiff's deposition testimony and responses to interrogatories describing the alleged harassing conduct of Holmes. As such, determining whether Plaintiff was indeed subjected to harassment that her supervisors failed to prevent requires difficult determinations of credibility and proof. Cf Meritor Sav. Bank, FSB, 477 U.S. at 68 (explaining that a claim for hostile work environment based predicated upon allegations of sexual harassment "presents difficult problems of proof and turns largely on credibility determinations committed to the trier of fact, . . .") Based on the foregoing, the Court finds that Plaintiff has satisfied her burden of establishing a triable issue of material fact that

---

[10] The Court finds it important to note that it does not find that Plaintiff *was* in fact subjected to a hostile work environment. Indeed, the Court finds it equally plausible that a reasonable juror could find that Plaintiff was not subjected to a hostile work environment because of her race. However, on a motion for summary judgment, the Court must draw all reasonable inferences in favor of the non-moving party. The Court finds that the evidence proffered establishes a reasonable inference that Plaintiff's superiors did not take sufficient steps to prevent the hostile environment because Holmes is African American and Plaintiff was Hispanic. As such, the Court finds that these questions of fact and credibility must be determined by a jury, not the Court on a motion for summary judgment.

Defendant subjected her to a hostile work environment.

### ii. Remedial Measures

The Court also finds that Plaintiff has established a genuine issue of material fact as to whether Defendant took adequate remedial and disciplinary action when Plaintiff complained of Holmes' harassing conduct. First, the Court acknowledges, as does Plaintiff, that Holmes was placed on administrative leave and suspended in 2008, and was ultimately terminated in 2009. However, according to the evidence proffered by Plaintiff, which the Court must believe, the harassing conduct began in 2006, and continued until Holmes was terminated in 2009. See Baldwin v. Continental Cas. Co., 2004 WL 2254938 at *8 (N.D. Cal. Oct. 5, 2004) ("on summary judgment the Court does not weigh the evidence presented and must believe the non-moving party.") In fact, Plaintiff testified that even after the national director of CNCS terminated Holmes, "Phipps intentionally and knowingly allowed Holmes to be present on campus" despite Plaintiff's numerous complaints detailing Holmes harassing conduct. (ECF 48 #17.) Holmes' 2009 appearance on campus was the proverbial final straw that broke the camel's back, causing Plaintiff to leave campus and never return.

Based on the foregoing, the Court finds that genuine issues of material fact exist as to whether Defendant took sufficient remedial measures to either "stop harassment by the person who engaged in the harassment" or "persuade potential harassers to refrain from unlawful conduct." Nichols, 256 F.3d at 875. Based on the foregoing, Defendant's motion for summary judgment on Plaintiff's Title VII claim for racial discrimination under a hostile work environment theory is DENIED.

## CONCLUSION

Based on the foregoing, Defendant's motion for summary judgment is GRANTED in part and DENIED in part. Specifically, Defendant's motion as to Plaintiff's claim for retaliation under Title VII is GRANTED; Defendant's motion as to Plaintiff's claim for racial discrimination under Title VII is DENIED.

Dated: June 12, 2014

Troy L. Nunley
United States District Judge