1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

LORRAINE FRIAS,

            Plaintiff,

     v.

WENDY SPENCER, Chief Executive
Officer of the Corporation for National and
Community Service,

            Defendant.

No.  2:11-cv-02178-TLN-CMK

**ORDER**

This matter is before the Court pursuant to Defendant Wendy Spencer's ("Defendant")

Motion to Revise the Court's Summary Judgment Order.  (ECF No. 60.)  Plaintiff Lorraine Frias

("Plaintiff") opposes Defendant's motion.  (ECF No. 63.)  Defendant has filed a reply.  (ECF No.

64.)  The Court has carefully considered the arguments raised by the parties.  For the reasons set

forth below, Defendant's Motion to Revise the Court's Summary Judgment Order is DENIED.

    I.       PRELIMINARY DISCUSSION REGARDING NATURE OF MOTION

In essence Defendant's motion presents the Court with a purely legal question.  The

question is: whether a plaintiff may proceed to trial on a Title VII racially hostile work

environment theory where a superior refused to address severe and pervasive race-neutral

harassment because the superior preferred members of the harasser's race to those of plaintiff's.

(*See* ECF No. 60-1 at 2–4; ECF No. 64 at 3–4.)  Defendant argues this theory fails as a matter of

1

law. (*See* ECF No. 60-1 at 2–4; ECF No. 64 at 3–4.)  Consequently, Defendant argues the portion of the Court's order denying Defendant's motion for summary judgment on Plaintiff's Title VII discrimination claim ("Order") (ECF No. 52) must be revised to enter summary judgment in Defendant's favor. (*See* ECF No. 60-1 at 4; ECF No. 64 at 5.)

The parties disagree over whether Federal Rule of Civil Procedure 54(b) provides the proper vehicle for correcting the Court's alleged legal error.  Plaintiff argues that Defendant's motion should be construed as a motion to alter or amend under Federal Rule of Civil Procedure Rule 59(e) or as a motion seeking relief from a judgment under Federal Rule of Civil Procedure Rule 60(b). (ECF No. 63 at 1.)  Plaintiff further argues that if the motion is so construed, it would be untimely. (ECF No. 63 at 2.)  Defendant argues that a motion under Federal Rule of Civil Procedure 54(b) is proper because the Court has not yet entered judgment adjudicating all claims and, in Defendant's view, the Order contains a clear error because it permits a trial on a hostile work environment theory that fails as a matter of law. (ECF No. 60-1 at 2; ECF No. 64 at 1–2.)

The Court rejects Plaintiff's argument that this motion should be construed as either a motion under Rule 59(e) or Rule 60(b).  Rule 59(e) relates to the amendment of a final judgment or an appealable interlocutory order, and Rule 60(b) relates to the modification of a final judgment, order, or proceeding.  *See* Fed. R. Civ. P. 60(b); *Quinn v. Fresno Cty. Sheriff*, No. 1:10-cv-1617 LJO, 2012 WL 2839648, at *1–2 (E.D. Cal. July 10, 2012).  The Court's Order falls into none of these categories.  *See Quinn*, 2012 WL 2839648 at *1 (quoting *Senza–Gel Corp. v. Seiffhart*, 803 F.2d 661, 669 (Fed. Cir. 1986) ("A denial of summary judgment is not only not a 'final judgment,' and not appealable, it is not a judgment at all.  It is quite simply and solely a determination that one or more issues require a trial."))  However, the Court is authorized to reconsider or revise this Order under Rule 54(b) and its inherent powers.  *See* Fed. R. Civ. P. 54(b); *City of Los Angeles, Harbor Div. v. Santa Monica Baykeeper*, 254 F.3d 882, 885, 889 (9th Cir. 2001); *Andrews Farms v. Calcot, Ltd.*, 693 F. Supp. 2d 1154, 1165 (E.D. Cal. 2010) ("The denial of a summary judgment motion ... is an interlocutory, unappealable order that can be reviewed by the district court at any time before final judgment is entered.")

The Court sets out below an abbreviated factual and procedural background sufficient to

frame the Defendant's legal question.  Unless specifically identified, these are not in dispute for purposes of this motion and are drawn from the Court's Order.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff, a Hispanic female, was formerly an employee of the Corporation for National and Community Service ("CNCS").  (ECF No. 52 at 1.)  Plaintiff alleges that her co-employee, Willie Holmes, an African American male, constantly threatened and harassed her.  (ECF No. 52 at 1.)  Plaintiff alleges that, despite her repeated complaints and the complaints of numerous other employees, Plaintiff's second-line supervisor, Jim Phipps, and the National Director of CNCS, Merlene Mazyck, failed to adequately discipline Holmes in order to prevent further threats and harassment.  (ECF No. 52 at 2.)  Both Phipps and Mazyck are African American.  (ECF No. 52 at 2.)  No evidence was offered that any of Holmes's behavior was overtly racial, e.g., the use of racial epithets, or that his conduct toward Plaintiff was motivated by Plaintiff's race.  However, Plaintiff did introduce evidence that her first-line supervisor, Vasco Espinoza, was informed by Phipps that neither Phipps nor Mazyck were willing to take any action against any African American employees.  (*See* Pl.'s Am. Separate Statement of Disputed Material Facts in Opp'n to Def.'s Mot. for Summ. J., ECF No. 48 at ¶ 22 (citing Vasco Espinoza's deposition testimony).)  Additionally, it is undisputed that Mazyck reduced a proposed termination of Holmes for threatening Espinoza to a 30-day suspension.  (Pl.'s Objections to Def.'s Separate Statement of Material Facts, ECF No. 46 at ¶¶ 10–11.)  Similarly, it is undisputed that CNCS ultimately issued a "final decision to remove Holmes" after Mazyck was replaced as National Director of CNCS.  (ECF No. 46 at ¶¶ 13–14.)

The Court's Order denied Defendant's motion for summary judgment on Plaintiff's Title VII racial discrimination claim after finding that Plaintiff had raised a triable issue regarding whether she had been subjected to a hostile work environment because of her race.  (ECF No. 52 at 12–14.)

## III.    STANDARD OF REVIEW

With respect to non-final orders, such as an order granting in part and denying in part a defendant's motion for summary judgment, the Ninth Circuit has recognized that "[a]s long as a

1   district court has jurisdiction over the case, then it possesses the inherent procedural power to

2   reconsider, rescind, or modify an interlocutory order for cause seen by it to be sufficient." *Santa*

3   *Monica Baykeeper*, 254 F.3d at 885 (internal quotation marks omitted).  This inherent power is

4   grounded "in the common law and is not abridged by the Federal Rules of Civil Procedure." *Id*.

5   at 887.  In addition to the inherent power to modify a non-final order, Rule 54(b) authorizes a

6   district court to revise a non-final order "at any time before entry of a judgment adjudicating all

7   the claims."  Fed. R. Civ. P. 54(b); *see also Regents of Univ. of Calif. v. Bernzomatic*, No. 2:10–

8   cv–1224 FCD GGH, 2011 WL 666912, at *2 (E.D. Cal. Feb.11, 2011) (relying on Rule 54 in

9   deciding whether to reconsider the denial of summary judgment).  A district court may reconsider

10  and reverse a previous interlocutory decision for any reason it deems sufficient, even in the

11  absence of new evidence or an intervening change in or clarification of controlling law.  *Abada v.*

12  *Charles Schwab & Co., Inc.*, 127 F. Supp. 2d 1101, 1102 (S.D. Cal. 2000).  Nevertheless, a court

13  should generally leave a previous decision undisturbed absent a showing of clear error or

14  manifest injustice.  *Id*. at 1102.

15      **IV.   ANALYSIS**

16      As a preliminary matter, the Court rejects Plaintiff's argument that Defendant's motion is

17  untimely.  Plaintiff's argument is premised on the idea that this motion should have been brought

18  under either Rule 59(e) or Rule 60(b), which the Court rejected above.  (*See* ECF No. 63 at 1–3.)

19  The Court still has jurisdiction over the case, and a final judgment adjudicating all of Plaintiff's

20  claims has not been entered.  Accordingly, whether Plaintiff's motion is treated as appealing to

21  the Court's inherent authority to modify a non-final order, or a motion under Rule 54(b),

22  Defendant's motion is timely.  *See* Fed. R. Civ. P. 54(b); *Santa Monica Baykeeper*, 254 F.3d at

23  885.

24      Before proceeding, it is worth noting that Plaintiff specifically disavowed that she was

25  proceeding on a disparate treatment theory for her Title VII racial discrimination claim.  (*See*

26  ECF No. 52 at 11.)  Plaintiff proceeds solely on a hostile work environment claim based on race

27  theory.  (*See* ECF No. 63 at 3–4.)

28      To survive at the summary judgment stage on a Title VII hostile work environment based

4

1   on race claim, a plaintiff must submit sufficient evidence to raise a triable issue as to the

2   following elements: (1) that she was subjected to verbal or physical conduct because of her race;

3   (2) that the conduct was unwelcome; and (3) that the conduct was sufficiently severe or pervasive

4   to alter the conditions of the plaintiff's employment and create an abusive work environment.

5   *Manatt v. Bank of Am., NA*, 339 F.3d 792, 798 (9th Cir. 2003); *Kang v. U. Lim Am., Inc.*, 296

6   F.3d 810, 817 (9th Cir. 2002).  The Ninth Circuit has held that individual defendants may not be

7   held personally liable under Title VII for their own harassing behavior.  *See Miller v. Maxwell's*

8   *Intern. Inc.*, 991 F.2d 583, 587 (9th Cir. 1993).  Therefore, if the plaintiff is successful in making

9   a sufficient showing on these elements, the court examines whether the plaintiff's employer is

10  liable for a racially hostile work environment created by its employees.  *See Vance v. Ball State*

11  *Univ.*, 133 S. Ct. 2434, 2439 (2013).  Because Defendant's motion only challenges the first

12  element, the Court need not further explicate the standard.  (*See* ECF No. 60-1 at 2–3; ECF No.

13  64 at 3.)

14          Defendant contends that in order to satisfy the first element a plaintiff must submit

15  evidence that her tormentor displayed overtly racial behavior, e.g., using racial epithets, or

16  evidence that the tormentor was motivated by hatred or contempt for the plaintiff's race.  For

17  example, Defendant argues the Court "erred" in concluding that Plaintiff was subjected to an

18  "objectively and subjectively racially hostile" environment because the "Court did not find that

19  the harassment and yelling [at Plaintiff by Holmes] was *racially* hostile, as opposed to simply

20  hostile." (ECF No. 60-1 at 3 (emphasis retained).)  Additionally, Defendant suggests that

21  "fail[ure] to respond to [Plaintiff's] complaints about Holmes's abusive, but racially-neutral,

22  behavior because Plaintiff is Hispanic and her superiors are African American" can only be heard

23  as a disparate treatment claim, if at all.  (ECF No. 64 at 3.)

24          Defendant's contention is inconsistent with the text of Title VII and the Supreme Court

25  and Ninth Circuit's explanation of the nature of Title VII hostile work environment claims.  Title

26  VII provides in relevant part that "[i]t shall be an unlawful employment practice for an employer

27  … to discriminate against any individual with respect to his compensation, terms, conditions, or

28  privileges of employment, because of such individual's race, color, religion, sex, or national

1   origin." 42 U.S.C. § 2000e-2(a)(1).  The hostile work environment theory of liability for a Title

2   VII discrimination claim derives from the Supreme Court's interpretation of "terms" and

3   "conditions" to cover more than "'terms' and 'conditions' in the narrow contractual sense." *See*

4   *Oncale v. Sundown Offshore Serv., Inc.*, 523 U.S. 75, 78 (1998); *Meritor Sav. Bank, FSB v.*

5   *Vinson*, 477 U.S. 57, 67 (1986) (explaining for harassment based on sex to be actionable under

6   Title VII it must be sufficiently severe or pervasive to alter the terms and conditions of the

7   plaintiff's employment); *Harris v. Forklift Sys. Inc.*, 510 U.S. 17, 21–22 (1993) (explaining that

8   the work environment of the plaintiff must be both subjectively and objectively perceived as

9   abusive because "if the victim does not subjectively perceive the environment to be abusive, the

10  conduct has not actually altered the conditions of the victim's employment, and there is no Title

11  VII violation").

12          The Supreme Court's analysis in *Oncale* made clear that harassment of a person

13  constitutes "*discrimination* … because of" her membership in a class protected by Title VII when

14  the harassment she endures subjects her to "disadvantageous terms or conditions of employment

15  to which members" outside of this class are not exposed.  *Oncale*, 523 U.S. at 80 (emphasis

16  retained).  There the Court acknowledged that "male-on-male sexual harassment was assuredly

17  not the principal evil Congress was concerned with when it enacted Title VII" but that the Court's

18  holding "must extend to sexual harassment of any kind that meets the statutory requirement." *Id*.

19  at 79–80.  Consequently, the Court explained that Title VII covered same-sex harassment

20  irrespective of the sexual orientation of the harasser or whether the harasser was motivated by

21  sexual desire so long as the plaintiff was subjected to the harassment because of his sex.  *Id*. at 80.

22          Ninth Circuit precedent demonstrates that conduct by superiors which exposes a plaintiff

23  to physically dangerous work conditions because of her race is properly considered in

24  determining whether the plaintiff has been subjected to a hostile work environment because of her

25  race.  *See McGinest v. GTE Serv. Corp.*, 360 F.3d 1103, 1107–08, 1118, 1125 (9th Cir. 2004).  In

26  pertinent part, the Ninth Circuit in *McGinest* reversed the district court's order granting summary

27  judgment on the plaintiff's racially hostile work environment claim.  *Id*. at 1125.  There the Ninth

28  Circuit concluded that the plaintiff had "persuasively demonstrat[ed] that he was subjected to a

6

1    hostile work environment" by submitting two categories of evidence.  *Id*. at 1107, 1119.  One

2    category was "written and oral derogatory statements."  *Id*. at 1107.  The other category was

3    "concrete actions" that at times put the plaintiff in serious physical danger.  *Id*. at 1107–09.  For

4    example, the plaintiff submitted evidence that, due to his race, he was required to work either

5    "without proper equipment" or without "sufficient crew members to safely perform the job" by

6    one of his supervisors.  *Id*. at 1107.  The plaintiff also submitted evidence that he experienced a

7    potentially life-threatening accident because, "due to his race, both his supervisor and garage

8    personnel were unwilling to ensure that his vehicle received necessary maintenance."  *Id*. at

9    1107–09, 1114.

10          Ninth Circuit precedent also demonstrates that exposing a plaintiff to physical violence

11   and race-neutral verbal abuse need not be accompanied by evidence that the plaintiff's tormentor

12   hated members of the plaintiff's ethnic or racial group or even had negative views of them in

13   order to establish a Title VII hostile work environment claim.  *Kang*, 296 F.3d at 817.  In

14   applicable part, the Ninth Circuit in *Kang* reversed the district court's order granting summary

15   judgment on the plaintiff's hostile work environment based on a national origin claim.  *Id*.  There

16   both the plaintiff and the alleged harasser, his supervisor, were of Korean descent.  *Id*.  The

17   plaintiff alleged that his supervisor viewed Koreans to be superior to others and subjected the

18   plaintiff and other Korean workers to verbal and physical abuse for failing to live up to this view.

19   *Id*.  The Ninth Circuit acknowledged that this was an "unusual" case in that it involved failure to

20   live up to positive stereotypes and did not involve the plaintiff being subjected to "racial epithets

21   in the workplace."  *Id*.  Nevertheless, the Ninth Circuit explained that being unusual did not

22   remove the case from the "evil at which the statute is aimed."  *Id*.

23          The Court acknowledges that in the instant case Plaintiff's allegations are "unusual".  The

24   Court has been able to locate only a few instances of published opinions relating to factually

25   similar allegations, each arising in the context of suits by teachers alleging that school

26   administrators were unwilling to adequately discipline students that threatened these teachers and

27   that this unwillingness was based on the relevant teacher's race or gender.  *See, e.g.*, *Bliss v.*

28   *Rochester City Sch. Dist.*, 196 F. Supp. 2d 314 (2002) (dealing with multiple plaintiffs, two of

whom made such claims); *Murphy v. Bd. of Educ. of Rochester City Sch. Dist.*, 273 F. Supp. 2d 292 (2003); *Cepada v. Bd. of Educ. of Baltimore Cty.*, 814 F. Supp. 2d 500 (2001).  In both *Bliss* and *Murphy*, the district court entered summary judgment on the relevant hostile work environment claim due to the plaintiff's failure to submit sufficient evidence that the school district acted the way it did because of that plaintiff's race.  *Bliss*, 196 F. Supp. 2d at 325, 330; *Murphy*, 273 F. Supp. 2d at 312.  However, in neither instance was it suggested that such a claim could not be made if a plaintiff submitted sufficient evidence.  *Bliss*, 196 F. Supp. 2d at 325 ("But, the defect here is that Bliss failed to set forth sufficient evidence that discrimination against Caucasians was more than likely the reason for the district's alleged failure to act concerning these student-teacher problems."); *Murphy*, 273 F. Supp. 2d at 312 ("[N]or is there any evidence to support plaintiff's conclusory allegation that the District turned a blind eye to violence only when it was perpetrated against white teachers.").  Moreover, the district court in *Cepada* denied the board of education's motion to dismiss on the plaintiff's hostile work environment claim concluding that the plaintiff, an African American male, had not failed to state a hostile work environment claim where he alleged that: (i) the "administration ignored his requests to remove or take action against disruptive and violent students," including one that threatened him with a gun, and (ii) administrators were responsive to dangerous student incidents involving his white and female colleagues.  *Cepada*, 814 F. Supp. 2d at 512.

The Court finds the analysis of *Cepada* to be consistent with *Oncale*, *McGinest* and *Kang* and therefore is persuaded that a plaintiff may proceed to trial on a Title VII racially hostile work environment theory where a superior refused to address severe and pervasive race-neutral harassment because the superior preferred members of the harasser's race to those of plaintiff's. Plaintiff has introduced evidence suggesting that her superiors did not discipline Holmes adequately because of their preference for members of Holmes's race.  (*See* ECF No. 48 at ¶ 22.) If a jury finds Espinoza's testimony credible they could reasonably infer that Plaintiff's superiors would have been more responsive to her concerns if Plaintiff was of their preferred race.  The credibility of Plaintiff's witness is for the jury to decide.  Consequently, the Order does not need to be revised as the Defendant has failed to show it contains legal error.

V.    CONCLUSION

For the reasons set forth above, Defendant's Motion to Revise the Court's Summary Judgment Order is DENIED.

IT IS SO ORDERED.

Dated: November 28, 2016

Troy L. Nunley
United States District Judge

9